**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

PATRICIA LISITANO, as Personal
Representative of the Estate of
ROSEMARIE PULIZZOTTO, Deceased,

Plaintiff

vs.

GVDB OPERATIONS, LLC, d/b/a
GRAND VILLA OF DELRAY BEACH EAST

      Defendant.
_____/

## NOTICE OF REMOVAL

Defendant GVDB OPERATIONS, LLC, d/b/a GRAND VILLA OF DELRAY BEACH EAST, by and through undersigned counsel, hereby gives notice pursuant to the provisions of 28 U.S.C. § 1441(a) of the removal of this action from Circuit Court of Palm Beach County to the United States District Court for the Southern District of Florida, Palm Beach Division, based upon the grounds for removal as follows:

1. Plaintiff filed this case, CASE NO. 50-2020-CA-014128, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County County, Florida on December 17, 2020. (Compl. ¶ 1. **Ex. A**.).

2. Defendant was served on December 31, 2020. **Ex. B**.

3. Defendant is timely filing this Notice of Removal within thirty days of service of process as required by 28 U.S.C. § 1446(b).

4. Removal to the United States District Court for the Southern District of Florida, Palm Beach Division, is proper based on this Court's original jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act"), and thus

arise under federal law. In addition, federal jurisdiction is also appropriate as this state action raises substantial federal issues and therefore "arises under" federal law.

5.   As required by 28 U.S.C. § 1446(d), concurrent with this filing, Defendant is filing a true and accurate copy of this Notice of Removal with the Circuit Court of Palm Beach County of the State of Florida and all parties of the removal of this action from that court. Defendant is also providing notice to Plaintiff of this filing pursuant to 28 U.S.C. § 1446(d).

6.   By filing this Notice of Removal, Defendant does not waive any other rights or defenses that may be available to it.

## JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 (FEDERAL QUESTION)
### Nature of the Case

7.   Plaintiff alleges that GRAND VILLA DELRAY BEACH EAST held itself out to be a licensed nursing home and long-term care facility in West Palm Beach, Florida.[1] (Compl. ¶ 8.).

8.   Mrs. Pulizzotto resided in GRAND VILLA DELRAY BEACH EAST during the COVID-19 pandemic. (*See* Compl. ¶ 11, 12, 16-18).

9.   Plaintiff asserts state-law causes of action against Defendant for negligence causing wrongful death. Plaintiff's claims arise from Defendant's response to the COVID-19 pandemic and its administration and use of testing equipment, personal protective equipment ("PPE"), infection control measures, safety equipment, and other countermeasures in an attempt to prevent or mitigate the spread of COVID-19.

10.  Plaintiff alleges, *inter alia*, that Defendant was negligent in providing adequate and appropriate protective and support services against COVID-19 and having adequate policies and procedures in place for the protection, supervision, and safety of its residents from COVID-19. (Complaint ¶ 11., A., B., C., D.).

---

[1] GRAND VILLA DELRAY BEACH EAST, per its license, is an Assisted Living Facility and not a nursing home.

**Plaintiff's Claims are Covered by the PREP Act**

11.     Although Plaintiff's claims are pled under state law, they sound in federal law. The PREP Act provides the exclusive remedy for claims for injury related to a covered person's use of countermeasures to combat a pandemic, and it provides immunity against such claims under all other laws.

12.     Healthcare providers across the world have spent the greater part of 2020 battling the COVID-19 pandemic.

13.     Congress enacted the PREP Act in anticipation of public health crises such as the COVID-19 pandemic.

14.     The PREP Act grants a covered person immunity "from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . ." to combat a pandemic. 42 U.S.C. §§ 247d-6d(1) (2018). Congress' goal was to enable healthcare providers, including assisted living facilities, to focus on using every available means to combat a pandemic and save lives without being chilled in their efforts by the threat of lawsuits.

15.     When the PREP Act's immunity provision is triggered—as it was by the Secretary of Health and Human Services' March 17, 2020 declaration, effective February 4, 2020— its coverage is sweeping, applying to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018) (emphasis added). Plaintiff's claims are in the heartland of that grant of immunity because they arise directly out of and relate to the manner in which Defendant administered, allocated and used covered countermeasures during the pandemic. (Compl. ¶ 11.).

16.     The PREP Act provides that when a "disease or other health condition or other threat to health constitutes a public health emergency," the Secretary of Health and Human services may issue a declaration "recommending [] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" against the disease. 42 U.S.C. § 247d–6d(b)(1) (2018). When such a declaration issues,

"covered persons" who administer or "use covered countermeasures" become "immune from suit and liability under Federal and State law with respect to *all claims for loss caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d–6d(b)(1) (2018) (emphasis added).

17. The PREP Act does not leave plaintiffs without remedy. Instead, it redirects plaintiffs to two exclusive federal remedies tailored for individuals with claims of loss arising out of the use of, or alleged failure to use, covered countermeasures. First, the PREP Act created a "Covered Countermeasure Process Fund" for the purpose of "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d–6e(a) (2018). Individuals can receive compensation from this fund by applying for benefits through the Countermeasures Injury Compensation Program. *See* 42 C.F.R. §§ 110.1–110.100. Second, an injured person may bring "an exclusive Federal cause of action" under the PREP Act "against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1) (2018). The PREP Act also sets forth specific procedures that govern lawsuits asserting this exclusive cause of action. *Id.* § 247d-6d(e).

18. On March 17, 2020, the Secretary of Health and Human Services issued a declaration announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act . . . is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency" related to COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21,102 (Apr. 15, 2020) (the "Declaration").

19. In that Declaration, the term "administration" is defined broadly to extend beyond the physical distribution of COVID-19 countermeasures to the "management and operation

of countermeasures programs, or management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See* 85 Fed. Reg. 15,202.

20. The Declaration was subsequently amended to add respiratory protective devices to the list of covered countermeasures. *See* 85 Fed. Reg. 2101. On June 8, 2020, the Declaration was amended again to reflect HHS's initial intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35,100.

21. Further, on December 3, 2020, the HHS Secretary issued the Fourth Amendment to the Declaration ("Amendment Four") for publication in the Federal Register. 85 Fed. Reg. 79,1901 (Dec. 3, 2020). In short, Amendment Four, *inter alia*:

   a. Adopts all COVID-19 Advisory Opinions into its initiating Declaration giving that direction controlling authority over interpretations of the PREP Act, *id.* at 3, 5, 15;

   b. Declares that an omission to administer a covered countermeasure can fall within the PREP Act's protections, *id.* at 4, 13–14, 25; and

   c. Makes explicit that cases involving COVID-19 covered countermeasures are to be in the federal court system or administrative alternative remedy system provided by Congress and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic, *id.* at 14, 26.

22. Amendment Four requires *Chevron* Deference to HHS Advisory Opinions and formally incorporates all HHS Advisory Opinions related to COVID-19 and the PREP Act into its initiating March 10, 2020 declaration. *See id.* at 5. Thus, it is beyond question that these Advisory Opinions must be given *Chevron* "controlling weight." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984); *see also* Amendment Four at 15 ("This Declaration is a 'requirement' under the PREP Act.").

23. Amendment Four also addresses HHS's authority to define the application of the PREP Act by stating:

> 42 U.S.C. 247d-6d(b)(7) provides that '[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.'

*See* Amendment Four, at 26 n.25. Where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *Chevron*, 467 U.S. at 843–44.

24. Amendment Four affirmatively establishes federal jurisdiction over Plaintiff's Complaint and urges courts to implement "*exclusive* federal jurisdiction" of COVID-19 actions. (emphasis added) The COVID-19 pandemic requires a nationally consistent response to the administration and use of covered countermeasures, including a "uniform interpretation of the PREP Act." *See* Amendment Four at 13–14. Indeed, this is Congress' purpose in establishing that "the *sole* exception to the immunity from suit and liability of covered persons" shall be an "*exclusive Federal* cause of action." *Id.* at 14 (emphasis added). HHS recognizes "[i]n all other cases, an injured party's exclusive remedy is an administrative remedy under [the PREP Act]." *Id.* at 26. And it notes, finally, that: "Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance." *Id.; see also id.* at 26 n. 25.

25. Nowhere does the Secretary of HHS, which is charged with implementing this "whole-of-nation" pandemic response, so much as suggest that COVID-19 claimants have the option of pleading the panoply of state law claims in the fifty-states' courts instead of or in addition to PREP Act claims. HHS is clear that claims such as Plaintiff's COVID-19 claims are federal claims and belong in the federal court system. *Id.* at 26.

26. HHS further explains that PREP Act liability protections invoke federal jurisdiction under the *Grable* test. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (providing for embedded federal question jurisdiction). Amendment Four directly addresses the federal interest in cases like the one before this Court by twice stating "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable*". Amendment Four at 13–14, 26.

27. Recently, on January 8, 2021, HHS published an Advisory Opinion to address questions raised by the Fourth Amendment. *Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, Jan. 8, 2021.*

28. Specifically, HHS General Counsel notes that HHS has "received questions as to whether the PREP Act applies where a covered person declined to use a covered countermeasure when it arguably ought to have been used." *See id*. at p. 1. The Opinion states, "These inquiries were stimulated, as we understand, by a spate of recent lawsuits, most involving nursing homes and other healthcare facilities, where patients or their estates allege that patients contracted COVID-19 because the facility, among other things, failed to provide its staff with personal protective equipment ("PPE"), failed to teach the staff how to properly use that equipment, or failed to ensure that its staff used the PPE that it had been given." *Id*.

29. The Opinion notes that some district courts have interpreted the scope of the immunity in subparagraph (B) as requiring "use." *Id.* at 3. But the Advisory Opinion then goes on to reject this view and *Lutz v. Big Blue Healthcare, Inc.*, 2020 WL 4815100, at *8 (D. Kan. 2020), wherein, in remanding the case to state court, the Court held "[t]here is simply no room to read [the PREP Act] as equally applicable to the non-administration or non-use of a covered countermeasure." *Id.* The Advisory Opinion notes that this "black and white" view clashes with the plain language of the PREP Act, which extends immunity to anything "relating to" the administration of a covered countermeasure. *Id.* The Opinion concludes that where a facility has been allocated a scarce therapeutic purchased by the federal government, and that facility allegedly fails to administer that therapeutic, the facility's refusal to administer that therapeutic could still trigger the PREP Act where the non-use was the result of conscious decision-making. *Id.* Further, HHS states that decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning and thus is expressly covered by PREP Act. *Id.* at 4.

30. Moreover, the Opinion states unequivocally that the PREP Act is a "Complete Preemption Statute." *Id*. at 2. The Opinion also states that, in addition to complete preemption as the basis for Article III jurisdiction and removal, the Supreme Court has recognized a separate doctrine in *Grable* that provides a basis for jurisdiction in these cases. *Id*. at 4. HHS General Counsel explains, "Under *Grable*, even in the absence of a claim arising under federal law, "<u>a federal court ought to be able to hear claims</u> recognized under

state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*. (emphasis in original). Thus, a substantial federal question is implicated, for example, where "the interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court." *Id.* at 4-5. The Opinion states that in terms of the PREP Act, "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *Id.* at 5. The Opinion goes on to state that the Secretary, in his Fourth Amendment to his PREP Declaration, similarly concluded, when he stated that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities" *Id.*

31. Therefore, this Advisory Opinion concludes that the Secretarial determination provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure. *Id.* Once invoked, the Court retains the case to decide whether the immunity and preemption provisions apply. If the Court finds that they apply, it would dismiss the case or if death or serious physical injury proximately caused by willful misconduct is alleged, transfer it to the District Court for the District of Columbia. *Id. (*citing 42 U.S.C. § 247d-6d(d)-(e)).

32. Significantly, on January 19, 2021, the United States Government, in an effort to clarify the application of the PREP Act to COVID-19 long-term care cases filed a Statement of Interest that urges that the PREP Act "completely preempts claims relating to the administration or use of covered countermeasures with respect to a public health emergency." *See Statement of Interest of the United States, Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC.*, MD TN, 3:20-cv-00683, January 19, 2021.

33. This Statement of Interest is a filing of an agency which—albeit is not the agency charged with the implementation and interpretation of the PREP Act— is the agency

91184872v.1

charged with, *inter alia*, the enforcement of the laws of the United States, the defense of interests of the United States, ensuring public safety, and ensuring the fair and impartial administration of justice. As such the Statement of Interest commenting on the scope of a federal court's jurisdiction is of "considerable interest" to the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (holding that the State Department's Statement *amicus curiae* brief on the subject of exercise of federal jurisdiction and statutory construction is of "considerable interest").

34. According to the *Statement of Interest of the United States*, "With a proper focus on 'whether Congress intended the federal cause of action to be exclusive,' [ ] *it becomes clear that the PREP Act provisions discussed above 'bespeak an intent to displace state-law remedies entirely for such damages claims.'" Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 10; *In re WTC Disaster Site*, 414 F.3d 352, 375 (2d Cir. 2005) (emphasis added)).

35. The Statement of Interest provides, *inter alia*, that the nature of the complaint determines complete preemption, not the stated claims; it also provides and that the PREP Act's immunity for all Federal and state law claims and extensive claims process established as the sole exception to immunity make the PREP Act a complete preemption statute. Id. at 6–8.

36. The Statement of Interest constitutes the official position of the United States' interest in the enforcement of the PREP Act and speaks directly to the declared policy of Congress and this country that the nation's critical partners be afforded the protection's Congress promised, particularly that protection of a federal forum and an exclusive administrative claims process and litigation process. Congress, and the executive branch through both HHS and now the Department of Justice, have spoken and declared the urgent need for federal forum review of claims. And it confirms the view that the PREP Act is not an additive remedy to COVID-19 injuries, but rather provides a national alternative claims and litigation process in the face of a national crisis.

37. Here, based on the face of the complaint, the totality of the allegations made therein and the logical impact of its most central allegations, the PREP Act is implicated by

Plaintiff's claims against Defendant as "covered persons" engaged in "recommended activities" under the Act.

38. At all times relevant to the Complaint, Defendant was a "covered person" for the purposes of the PREP Act. "Covered persons" include "qualified persons who prescribed, administered, or dispensed" countermeasures against a pandemic, and "program planners" who "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use" of countermeasures against COVID-19. 42 U.S.C. § 247d–6d(i)(2) (2018).

39. A "qualified person" under the PREP Act is a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense [covered] countermeasures," or any other person identified as a covered person in the Secretary's emergency declaration. 42 U.S.C. § 247d–6d(i)(8) (2018). The Declaration identifies several additional categories of qualified persons, including "(a) Any person authorized in accordance with the public health and medical emergency response of [a state or local government] . . . to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of an emergency; (b) any person authorized to prescribe, administer, or dispense the Covered Countermeasures or who is otherwise authorized to perform an activity under the Emergency Use Authorization in accordance with Section 564 of the [Food, Drug, and Cosmetic Act]; and (c) any person authorized to prescribe, administer, or dispense Covered Countermeasures in accordance with Section 564A of the FD&C Act." 85 Fed. Reg. at 15,201–02.

40. Defendant and its staff were "qualified persons" under the Act because GRAND VILLA OF DELRAY BEACH EAST was licensed as an assisted living facility by the State of Florida and employed licensed health professionals, including licensed nursing personnel, who were authorized to administer countermeasures against diseases such as COVID-19. Compl. ¶ 6–7. Defendant's staff were also authorized to administer COVID-19 countermeasures under an Emergency Use Authorization ("EUA") issued by the FDA under Section 564 of the Food, Drug and Cosmetic Act. The EUA authorized healthcare

personnel to use certain face masks, respirators, and other PPE in healthcare settings during the COVID-19 outbreak. *See* Letter from Denise M. Hinton, Chief Scientist, FDA to Robert R. Redfield, Director, Ctrs. For Disease Control & Prevention, Mar. 28, 2020.

41. Defendant was also a "program planner" because they engaged in both the management and operation of countermeasure programs, including programs to control infections at the facility through visitation restrictions, such as limits on the number of visitors and visitor screening requirements, and the administration and/or use of countermeasures, such as PPE, to prevent and mitigate COVID-19.

42. In addition, PPE and test kits are covered countermeasures. The Declaration broadly defines covered countermeasures for purposes of the current pandemic to include "any . . . device" used to "diagnose, . . . prevent, or mitigate COVID-19" and regulated by the FDA or authorized for emergency use by the FDA. 85 Fed. Reg. at 15,202. PPE devices such as surgical masks and N95 respirators fall within this definition, as they prevent the spread of COVID-19 and are regulated as medical devices by the FDA. *See* 21 C.F.R. § 878.4040. Moreover, the Secretary made clear in an amendment to the declaration that all "respiratory protective device[s] approved by [the National Institute for Occupational Safety and Health]" are covered countermeasures. Further, COVID-19 test kits are similarly regulated by the FDA. As of June 30, 2020, 120 different brands of in vitro test kits and 37 molecular-based tests have been authorized for emergency use during the COVID-19 pandemic. U.S. Food & Drug Administration, *Emergency Use Authorization*.

43. Moreover, as HHS explained in an advisory opinion interpreting the PREP Act, "Congress did not intend to impose a strict-liability standard on covered persons for determining whether a product is a covered countermeasure." Robert P. Charrow, General Counsel, Dep't of Health & Human Servs., *Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act* 4 (as modified May 19, 2020) ("*HHS Advisory Opinion*"). Thus, "a person or entity that otherwise meets the requirements for PREP Act immunity will not lose that immunity—even if [a] product is *not* a covered countermeasure—if that person or entity reasonably could have believed that the product was a covered countermeasure." *Id.* (citing 42 U.S.C.

91184872v.1

§ 247d-6d(a)(4)(A) (2018)). Defendant's belief that the test kits and PPE their staff used to diagnose and treat residents were covered by the PREP Act was at least reasonable, given how many COVID-19 test kits and articles of PPE are covered countermeasures. Accordingly, even if the precise test kits and PPE that Defendant's staff used to diagnose and treat residents were not covered countermeasures, Defendant is still covered by PREP Act immunity.

44. Plaintiff's claims fall within the scope of the PREP Act as they are "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018) (emphasis added). Plaintiff's claims arising out of Defendant's administration, allocation, and use, of COVID-19 precautions – countermeasures -- in response to the COVID-19 pandemic. Plaintiff attacks the adequacy of the protective services" – countermeasures – that Defendant used in fighting against COVID-19 and the adequacy of Defendant's COVID-19 countermeasure policies and procedures in place. Plaintiff asserts negligent "management and operation" of a COVID-19 countermeasure plan coupled with the negligent "management and operation" of a COVID-19 countermeasure facility. Plaintiff's claims thus undoubtedly fall under the PREP Act, which encompasses "*any* claim for loss that has a causal relationship with" the administration or use of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B) (2018) (emphasis added).

45. In *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 954 N.Y.S. 2d 259, 262 (App. Div. 2012), the plaintiff alleged that a nurse employed by the defendant had inoculated the plaintiff's daughter against the H1N1 influenza virus without the plaintiff's consent, and she sued the defendant for negligence and battery. *Id.* at 261. The New York state court had little trouble concluding that the defendant was immune under the PREP Act from those tort claims, nothing that "the sweeping language of the statute's immunity provision" indicated that "Congress intended to preempt all state law tort claims arising from the administration of covered countermeasures by a qualified person" during a public health emergency. *Id.* at 263.

46. Moreover, the Supreme Court has recognized that "any" has an "expansive meaning." *Home Depot U.S.A. v. Jackson*, 139 S. Ct. 1743, 1750 (2019) internal quotation marks omitted); *see e.g., Boyle v. United States*, 556 U.S. 938, 944 (2009) ("The term 'any' ensures that the definition has a wide reach"); *Morales v. Trans. World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("ordinary meaning of the [] words 'relating to' is a broad one").

47. Finally, Defendant administered and used these PPE products in accordance with the public health and medical response to COVID-19 of two authorities having jurisdiction. *See* 85 Fed. Reg. at 15,202. A person acts according to the response of an authority having jurisdiction if the person engages in "any activity that is part of an authorized emergency response at the federal, regional, state, or local level," including activities "authorized through . . . guidance." *HHS Advisory Opinion* at 2. Both the federal government and the State of Florida have declared states of emergency related to COVID-19. *Id.* at 2; *see* COVID-19 Executive Orders, https://www.flgov.com/covid-19-executive-orders/ (last visited Dec. 15, 2020) (listing every order entered by Florida Governor Ron DeSantis relating to the COVID-19 pandemic). Further, both governments have issued guidance and policies directing how facilities such as GRAND VILLA OF DELRAY BEACH EAST should use and conserve PPE.[2]

48. Plaintiff's claims are, therefore, covered under the PREP Act. 42 U.S.C. § 247d-6d(a)(1).

## Plaintiff's Claims are Completely Preempted

49. Because the PREP Act provides the exclusive remedy for plaintiff's state law claims, they are completely preempted by federal law.

50. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). However, the doctrine of complete preemption creates an exception

---

[2] Ctrs. For Medicare & Medicaid Servs., *COVID-19 Long-Term Care Facility Guidance* (Apr. 2, 2020); Ctrs. For Disease Control & Prevention, *Strategies for Optimizing the Supply of Facemasks* (updated Mar. 17, 2020); CDC, *Using Personal Protective Equipment* (updated Aug 19, 2020); Exec. Order No. 20-009, *In Re: Suspension of Statutes, Rules, and Orders Pursuant to Executive Order Number 20-52, Made Necessary by the COVID-19 Public Health Emergency*; Exec. Order No, 20-52, *Emergency Management-COVID-19 Public Health Emergency*.

to this rule: "When [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b)." *Id.* at 8.

51. A federal statute completely preempts a state law cause of action when it "provide[s] the exclusive cause of action for the claim and also set[s] forth procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. Thus, for example, claims for usury brought against national banks are completely preempted by the National Bank Act, which "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." *Id.* at 9. Similarly, state law causes of action related to a benefits plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA") are completely preempted by ERISA, "which provides the exclusive federal cause of action for such disputes." *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). In sum, "[t]he complete preemption doctrine 'prevent[s] a plaintiff from avoiding a federal forum when Congress has created a federal cause of action with the intent that it provide the exclusive remedy for the particular grievance alleged by the plaintiff.'" *Rudel v. Hawaii Mgmt. All. Assoc.*, 937 F.3d 1262, 1270 (9th Cir. 2019) (quoting *Hansen v. Grp. Health Coop.*, 902 F.2d 1051, 1057–58 (9th Cir. 2018)).

52. The above situation is exactly what Congress did here: The PREP Act provides an exclusive federal cause of action for claims arising out of or relating to the administration and use, or lack of administration and use, of covered counter measures, 42 U.S.C. § 247d-6d(d)(1) (2018), and it prescribes the procedures and remedies governing that cause of action, 42 U.S.C. § 247d-6d(e) (2018). It thus completely preempts state-law causes of action related to such claims. Indeed, the PREP Act speaks even more clearly to complete preemption than the National Bank Act or ERISA: It expressly states that the private right of action it creates is "an exclusive Federal cause of action." 42 U.S.C. § 247d-6d(d)(1) (2018). Thus, as the New York Appellate Division has held, there is no doubt that the

"exclusive remedy under the statute is a federal cause of action to be brought in federal court" and that state law claims like Plaintiff's are completely preempted. *Parker*, 954 N.Y. S.2d at 262.

53. Moreover, in removing any doubt, on January 8, 2021, HHS stated unequivocally that the PREP Act is a "Complete Preemption Statute" in its latest Advisory Opinion addressing the PREP Act. *See Advisory Opinion 21-01* HHS explained that the PREP Act is a statute that completely preempts given that it "both" establishes a federal cause of action as the only viable claim and it vests exclusive jurisdiction in the federal court. *Id.* at 2.

54. As such, Plaintiff's exclusive remedy here is through the Act's Covered Countermeasure Process Fund or through a federal cause of action under the Act for death or serious physical injury proximately caused by willful misconduct. *Id.* § 247d-6d(d)(1).

55. As Plaintiff has alleged claims that are completely preempted under a federal statute, this Court has original jurisdiction pursuant to 28 U.S.C. §1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (See also *Statement of Interest* filed by the federal government regarding the federal question of total pre-emption of particular COVID-19, *supra.*).

56. Therefore, Plaintiff's claims may be removed to federal court. *Anderson*, 539 U.S. at 8.

### Plaintiff's Claims Raise Substantial Federal Issues

57. As addressed in the January 8, 2021 HHS Advisory Opinion, federal jurisdiction is also appropriate as this state action "arises under" federal law and raises a substantial federal issue. See *Grable*, 545 U.S. at 308.

58. The applicability of the PREP Act poses substantial federal issues that would serve to clarify and determine vital issues of federal law. Federal question jurisdiction over state law claims may be sustained if the claims present a substantial, embedded question of federal law. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 US 804, 808 (1986).

59. In Amendment Four, the Secretary makes explicit that the PREP Act presents substantial federal legal and policy issues, and that there are substantial federal legal and policy interests within the meaning of *Grable* in having a unified whole-of-nation response to the COVID-19 pandemic among federal, state, local and private-sector entities. The Secretary further states that: "[t]he world is facing an unprecedented global pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable* . . . in having a uniform interpretation of the PREP Act. . . . . Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations."

60. Here, Plaintiff alleges that Defendant failed to prevent the decedent from contracting COVID-19 as a result of the manner in which it allocated and used covered countermeasures in combatting COVID-19 as well as its management and operation of a countermeasure program and countermeasure facility during the pandemic. Such claims by their nature arise out of and relate to Defendant's administration of covered countermeasures and invokes the PREP Act. Thus, the federal legal and policy issues described in Amendment Four and the recent HHS Advisory Opinion control and require this Court to retain this action.

WHEREFORE, Defendant respectfully request that this action be removed to the United States District Court for the Southern District of Florida, Palm Beach Division, pursuant to 28 U.S.C. §§ 1331 and 1446.

91184872v.1

**CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing with the Clerk of Court using CM/ECF on January 20, 2021, upon Richard Schuler, Esq, SCHULER, HALVORSON, WEISSER, ZOELLER & OVERBECK, P.A., *Counsel for Plaintiff* (rschuler@shw-law.com, jdever@shw-law.com, mmaslak@shw-law.com).

             **Hall Booth Smith, P.C.**

             */s/ Jodi Barrett*
             Jodi G. Barrett, Esquire
             FBN: 0901156
             Angela M. Many, Esquire
             FBN: 28860
             J. Drew Piersa, Esquire
             FBN: 0109217
             *Counsel for Defendant*
             4360 Northlake Blvd., Suite 109
             Palm Beach Gardens, FL 33410
             T: 561-472-1020
             F: 561-472-1021
             jbarrett@hallboothsmith.com
             amany@hallboothsmith.com
             tlatham@hallboothsmith.com
             bbrostrom@hallboothsmith.com

91184872v.1